UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CHRISTOPHER THIENEMAN,                                              Plaintiff,

v.                                          Civil Action No. 3:17-cv-292-DJH

APRIL SMITH, et al.,                                              Defendants.

* * * * *

## MEMORANDUM OPINION AND ORDER

Between 2013 and 2016, local authorities in Louisville, Kentucky, prosecuted Plaintiff Christopher Thieneman for assault, wanton endangerment, and violation of a domestic-violence order. The charges arose from an altercation on September 16, 2013, involving Thieneman and Defendant April Smith, resulting in Thieneman's arrest. Thieneman now asserts claims of malicious prosecution, wrongful arrest, false imprisonment, violations of procedural and substantive due process, and failure to intervene against Defendants Smith, Ingrid Von Nostritz Geiser, Amy Phelps, Jessica Haworth, Sarah Banta, and Louisville-Jefferson County Metro Government, as well as "unknown defendant officers and civilian employees" and "unknown defendant employees." (Docket No. 1-1) In addition, Thieneman asserts claims for "unconstitutional policies/customs/practices, failure to train, and/or failure to act" and a claim of "municipal liability" against Louisville Metro, unknown officers, and unknown defendant employees. (*Id.*)

Louisville Metro, Geiser, and Smith have filed motions to dismiss for failure to state a claim (D.N. 4; D.N 5) and a motion to strike Thieneman's response to their motions to dismiss. (D.N. 7; D.N. 8) For the reasons discussed below, the motion to strike will be granted;

Louisville Metro and Geiser's motion to dismiss will be granted; and Smith's motion to dismiss will be granted in part and denied in part.

## I.    BACKGROUND

The facts set out below are alleged in the complaint.  For purposes of these motions to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  While the facts may be disputed, the Court "cannot resolve disputed facts when ruling on a motion to dismiss." *Genton v. Keystone Sporting Arms, Inc.*, No. Civ.A. 05-274-JBC, 2005 WL 2456252, at *1 (E.D. Ky. Oct. 5, 2005).

Thieneman and Smith began a business relationship that developed into a personal relationship for several years.  (D.N. 1-1, PageID # 9)  Thieneman ultimately wished to end his personal relationship with Smith, but Smith did not wish to end the relationship.  (*Id.*, PageID # 10)  On September 16, 2013, Smith and Thieneman met in a restaurant and spent several hours talking about their relationship.  (*Id.*)  When Thieneman needed to leave to attend to business matters, Smith offered to drive him to his appointments.  (*Id.*)  Thieneman accepted this invitation.  (*Id.*)  While riding in Smith's car, the couple began to argue.  (*Id.*)  Thieneman told Smith that he was finished with their relationship, left Smith's car while it was stopped at a traffic light, and walked away.  (*Id.*, PageID # 11)  Smith responded by also exiting her car, leaving the keys in the ignition and the engine running, and chasing Thieneman on foot.  (*Id.*)  Thieneman walked to a nearby commercial property that he owned and tried to enter a locked room, but Smith caught up with him and struggled with him over a cell phone.  (*Id.*)  Haworth and Banta, two Louisville Metro police officers, arrested Thieneman after Smith reported that he

had assaulted her. (*Id.*) Thieneman was charged with assault in the fourth degree and wanton endangerment in the second degree. (*Id.*, PageID # 12)

On the evening of Thieneman's arrest, Smith met with Phelps, another police officer, to make an official statement, which was tape-recorded. (*Id.*) After multiple requests by Thieneman and his counsel for a copy of this taped interview, they were informed that the recording had "started to erase itself" while it was in Phelps's possession. (*Id.*) Phelps admitted that she did not make copies of the tape or download its contents to her computer as required by the police department's standard procedure. (*Id.*) Since the police department's information-technology technicians were unable to retrieve the contents of the original recording, Phelps decided to re-interview Smith. (*Id.*)

After Thieneman's arrest, Phelps instructed Smith to file an emergency protection order against Thieneman in Oldham County, Kentucky. (*Id.*, PageID # 16) A domestic-violence order was issued, directing Thieneman to stay away from Smith and Smith's place of business, a suite in a commercial building owned by Thieneman that was leased to Smith as owner of a gym. (*Id.*) Because Smith ran her business out of Thieneman's office building, she had her mail delivered to Thieneman's office address. (*Id.*, PageID # 17) Smith's mail began to pile up, and Thieneman's assistant collected (but never opened) the mail. (*Id.*) Thieneman asked his assistant to put all of Smith's mail in an envelope and mail it to Smith's residence. (*Id.*) Upon receiving the envelope, Smith notified Phelps, and Thieneman was charged with violating the "no contact" provision of the domestic-violence order. (*Id.*) The judge ultimately dismissed the charge, telling Smith that Thieneman was "trying to help [her] not hurt [her]." (*Id.*)

A month or two later, Smith and Phelps accused Thieneman of sending two "compromising pictures" of Smith to her adult daughters. (*Id.*, PageID # 18) Smith had no

proof, however, of the pictures having been sent to anyone, or by anyone, and the judge summarily dismissed the charge. (*Id.*)

Finally, in May 2014, Smith and Phelps accused Thieneman of instructing employees to remove the front doors of Smith's gym and to move old equipment into Smith's gym space. (*Id.*) When police officers arrived to investigate, they found broken glass and equipment scattered across the commercial building's front parking lot. (*Id.*) Smith's husband admitted to causing this damage. (*Id.*) After deciding that this was a civil matter, the police declined to file a report and left without taking any further action. (*Id.*, PageID # 19) The next day, Thieneman sent one of his employees to the police station to obtain a police report. (*Id.*) Phelps invited the employee into an interrogation room, where the employee asked to leave after he discovered that Phelps expected him to blame Thieneman for the incident. (*Id.*) Thieneman and his counsel have requested records of this interrogation, but the police department insists that no such records exist. (*Id.*)

One week before Thieneman's trial was scheduled to begin on the assault and wanton-endangerment charges, Phelps falsified a police report to obtain a warrant for Thieneman's arrest. (*Id.*) As a result, Thieneman was arrested and charged with a felony for violating the domestic-violence order. (*Id.*, PageID # 20) Geiser, the prosecutor assigned to the case, used the flawed felony charge to attempt to coerce Thieneman to plead guilty to the assault charge in exchange for dropping the felony charge. (*Id.*) Thieneman's counsel instead elected to go to trial on both charges. (*Id.*) Thieneman and his counsel requested evidence of probable cause for the felony warrant, but none was produced. (*Id.*) Upon Geiser's request, the judge dismissed the felony charge. (*Id.*)

Thieneman went to trial on the assault and wanton-endangerment charges in May 2016. (*Id.*, PageID # 13)  At trial, Smith testified that Thieneman struck, pushed, or squeezed her, grabbed her neck, placed her in a headlock, and choked her during their September 16, 2013 encounter. (*Id.*, PageID # 13-14)  Geiser later admitted that Smith had lied during the trial. (*Id.*, PageID # 13)  In addition, Phelps restated Smith's account of the events that day, basing her testimony upon her recollection of the lost recorded interview. (*Id.*, PageID # 14)  Phelps testified that the recorded statements and photographs of Smith were consistent with Smith's condition on September 16. (*Id.*, PageID # 15)  In contrast, Thieneman testified that Smith caught up with him and began to struggle with him. (*Id.*)  He tried to block Smith from entering a room, but Smith forced her way in and tried to grab his cell phone. (*Id.*)  Thieneman denied that he struck, squeezed, choked, or otherwise injured Smith and denied placing her in a chokehold or headlock. (*Id.*)  During closing arguments, Geiser made false statements to the jury, accused a witness of crimes, and falsely accused Thieneman of "planting" a defense witness and suborning perjury. (*Id.*, PageID # 13)  Despite her accusation that Thieneman committed a felony by tampering with a witness, Geiser never charged him with such a crime. (*Id.*)

The jury found Thieneman not guilty of assault and guilty of wanton endangerment. (*Id.*, PageID # 20)  Thereafter, the Jefferson District Judge sentenced Thieneman on the wanton-endangerment charge and dismissed the charges of violation of a domestic-violence order, violation of conditions of release, and retaliation against a participant in a legal process. (*Id.*, PageID # 21)  This conviction is currently on appeal. (*Id.*, PageID # 20)

## II.    ANALYSIS

### A.    Motions to Strike

Geiser and Louisville Metro move to strike Thieneman's response to their motion to dismiss on the grounds that Thieneman (1) filed the response more than six months after it was due and (2) failed to request an extension or otherwise seek leave of Court to file an untimely response.  (D.N. 7)  Smith seeks to join Geiser and Louisville Metro's motion and further moves to strike Thieneman's response.  (D.N. 8)

Geiser, Louisville Metro, and Smith filed their motions to dismiss on May 17, 2017. (D.N. 4; D.N. 5)  Under Local Rule 7.1(c), "a party opposing a motion must file a response within 21 days of service of the motion."  LR 7.1(c).  Thieneman did not file his response to the motions to dismiss until December 18, 2017 (D.N. 6), more than six months past the twenty-one-day deadline.  Inexplicably, Thieneman did not ask the Court for an extension, seek leave of Court to file his response out of time, or even offer an explanation for his late filing.  No good cause for this significant delay has been suggested, nor has the Court been able to ascertain any such cause.  The Court will therefore grant the motion to strike Thieneman's response and will not consider the response in ruling on the defendants' motions to dismiss.  *See Morgan v. HSBC Mortg. Servs., Inc.*, 930 F. Supp. 2d 833, 835 (E.D. Ky. 2013) (granting motion to strike plaintiff's response to motion to dismiss where response was filed over six months after the motion was filed without a request for an extension or an explanation for its tardiness).

### B.    Motions to Dismiss

Louisville Metro and Geiser move the Court to dismiss all claims against them for failure to state a claim.  (D.N. 4)  Smith again seeks to join Louisville Metro and Geiser's motion and further moves the Court to dismiss all claims against her.  (D.N. 5)

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

### 1. Claims Against Louisville Metro

Thieneman asserts claims against Louisville Metro under both state and federal law. The Court will address the state-law claims first, followed by the federal section 1983 claims.

### a. State-Law Claims (Counts I and II)

Thieneman asserts claims against Louisville Metro for malicious prosecution, wrongful arrest, and false imprisonment under Kentucky common law. (D.N. 1-1, PageID # 21-24) "Under Kentucky law, it is well established that claims against counties are barred by sovereign immunity." *Reyes v. Salsman*, No. 3:15-CV-00587-GNS-DW, 2016 WL 247582, at *2 (W.D. Ky. Jan. 20, 2016) (citing *Franklin Cty. v. Malone*, 957 S.W.2d 195, 203 (1997)). While Louisville Metro is not a county, it is a consolidated local government. *Id.* And the Kentucky General Assembly has granted to consolidated local governments "the same sovereign immunity granted [to] counties." Ky. Rev. Stat. § 67C.101(2)(e); *see also Reyes*, 2016 WL 247582, at *2.

All state-law claims against Louisville Metro must therefore be dismissed on the basis of sovereign immunity.

### b.    Section 1983 Claims

The Court must address two separate issues when a § 1983 claim is asserted against a municipality: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).

Thieneman's complaint alleges unconstitutional policies/customs/practices (Count V), failure to train (Count V), failure to act (Count V), and municipal liability (Count VI) by Louisville Metro. (*Id.*, PageID # 27, 30) The Court notes that these "claims" are actually ways of showing that Louisville Metro is responsible for the allegedly unconstitutional conduct of its officers. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (explaining that a plaintiff may look to official policies, inadequate training, or custom in order to prove a municipality's policy or custom as required to support a § 1983 suit against a municipality). The unconstitutional policies/customs/practices, failure-to-train, and failure-to-act[1] claims in Court V and the municipal-liability claim in Count VI will therefore be dismissed, as they are not stand-alone claims.

The Court must now determine whether Thieneman has plausibly alleged an underlying constitutional violation to support his § 1983 claims against Louisville Metro. *See Blackmore v.*

---

[1] The Court finds this failure-to-act claim to be duplicative of the failure-to-train claim. Both claims are asserted against Louisville Metro only. (D.N. 1-1, PageID # 27) The complaint alleges that the failure of LMPD, or Louisville Metro, to institute a certain policy was "so likely to result in the violation of constitutional rights" that Louisville Metro can be said to have been deliberately indifferent. (*Id.*, PageID # 29) The complaint further alleges that "[t]he need to act should have been plainly obvious to" Louisville Metro policymakers. (*Id.*) These allegations mirror the test for deliberate indifference in the failure-to-train context. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers."). Thieneman bases his § 1983 claims against Louisville Metro on the following alleged constitutional violations: malicious prosecution, wrongful arrest, false imprisonment, violations of procedural and substantive due process, and failure to intervene. (D.N. 1-1, PageID # 21, 23-24, 26)

### i.  Malicious Prosecution (Count I)

A § 1983 claim for malicious prosecution consists of the following elements:

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (quoting *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017)).

Defendants argue that Thieneman's malicious-prosecution claim is untimely. (D.N. 4-1, PageID # 49-51) "In § 1983 suits, the applicable statute of limitations is determined by state law, while the 'date on which the statute of limitations begins to run . . . is a question of federal law.'" *King*, 852 F.3d at 578 (quoting *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)). "In Kentucky, a one-year statute of limitations applies to § 1983 claims that are characterized as malicious-prosecution actions." *Id.* To prevail on a malicious-prosecution claim under § 1983, a plaintiff must show that "the criminal proceeding was resolved in [his] favor." *Id.* at 580. Hence, "the statute of limitations in such an action does not begin to run until 'the plaintiff knows or has reason to know of' such favorable termination." *Id.* at 578 (quoting *Eidson*, 510 F.3d at 635).

The complaint alleges several criminal prosecutions against Thieneman.  On September 16, 2013, Thieneman was charged with assault and wanton endangerment.  (D.N. 1-1, PageID # 12)  On May 20, 2016, a jury found Thieneman not guilty of assault but guilty of wanton endangerment.  (*Id.*, PageID # 20)  On March 19, 2014, Thieneman was charged with violation of a domestic-violence order.  (*Id.*, PageID # 17)  A judge dismissed the charge on May 14, 2014.  (*Id.*)  A month or two later, Thieneman was again charged with violating the domestic-violence order.  (*Id.*, PageID # 18)  A judge summarily dismissed the charge after reading the complaint.  (*Id.*)  On or about May 29, 2014, Thieneman was charged with a felony for violating a domestic-violence order.  (*Id.*, PageID # 19-20)  A judge dismissed the felony charge shortly after Thieneman's May 2016 trial.  (*Id.*, PageID # 20)  Finally, the complaint makes reference to pending charges for violation of a domestic-violence order, violation of conditions of release, and retaliation against a participant in a legal process that were dismissed on April 20, 2016. (*Id.*, PageID # 21)  Thieneman filed his complaint on March 23, 2017.[2]  (*Id.*, PageID # 33)

A dismissal of charges satisfies the favorable-resolution element so long as the dismissal is based upon innocence and not the result of any settlement or compromise with the prosecutor. *See Taylor v. Lusardi*, No. 16-174-DLB, 2018 WL 1050455, at *3 (E.D. Ky. Feb. 26, 2018); *Evridge v. Rice*, No. 3:11-40-DCR, 2011 WL 6014407, at *3-4 (E.D. Ky. Dec. 2, 2011).  Before dismissing the charge on May 14, 2014, the Jefferson District Judge told Smith that Thieneman was only trying to help her by sending her mail.  (*See* D.N. 1-1, PageID # 17)  When another charge followed a month or two later, the judge refused to bring it to trial and summarily

---

[2] Louisville Metro and Smith were served with this lawsuit on April 19, 2017.  (D.N. 1-1, PageID # 4; D.N. 1-2, PageID # 35)  Thieneman verified his complaint, however, on March 23, 2017.  (D.N. 1-1, PageID # 33)  It is not clear from the complaint exactly when it was filed in state court.  The Court will assume for purposes of this analysis that the complaint was filed on March 23, 2017, the earlier of the two dates.

dismissed it after reading the complaint. (*Id.*, PageID # 18) Even assuming that these dismissals were based upon innocence, a malicious-prosecution claim based upon those charges would be untimely, as the complaint was filed well over one year after they were favorably terminated. *See King*, 852 F.3d at 578. (*See* D.N. 1-1, PageID # 17-18, 33) With respect to the May 2016 dismissal, Thieneman's complaint states that the felony charge was "only a contrivance to be used as a pretext to coerce a guilty plea" to other charges. (*Id.*, PageID # 20) And the April 20, 2016 dismissals disposed of charges that were "without any factual foundation." (*Id.*, PageID # 21) The Court thus assumes, from the allegations in the complaint, that these dismissals were based on innocence. Because it appears that the complaint was filed within one year of these dismissals (*see id.*, PageID # 33, 20-21), a malicious-prosecution claim based on those charges would not be barred by the statute of limitations.

Finally, the May 20, 2016 jury acquittal on the assault charge also satisfies the favorable-resolution element.[3] *See Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015); *Fleet v. Commonwealth of Kentucky Cabinet for Health & Family Servs.*, No. 3:15-CV-00476-JHM, 2016 WL 1241540, at *8 (W.D. Ky. Mar. 28, 2016). And because the complaint was filed within one year of that date (*see* D.N. 1-1, PageID # 20, 33), a malicious-prosecution claim based on that acquittal is also timely.

Thieneman has not sufficiently pleaded the deprivation-of-liberty element of his malicious-prosecution claims, however. Thieneman makes no allegation that he was arrested,

---

[3] Defendants assert that Thieneman's malicious-prosecution claim is barred by his conviction. (D.N. 4-1, PageID # 49) But although Thieneman was convicted of wanton endangerment, he was acquitted of assault. (D.N. 1-1, PageID # 20) Therefore, while he cannot pursue a malicious-prosecution claim with respect to the wanton-endangerment charge, he may pursue such a claim with respect to the assault charge. *See Kavazanjian v. Rice*, No. 03-CV-1923 (FB)(SMG), 2005 WL 1377946, at *4 (E.D.N.Y. June 6, 2015) (refusing to dismiss malicious-prosecution claim based upon charge of which plaintiff had been acquitted where plaintiff had been convicted on other counts).

incarcerated, or required to post any sort of bond as a result of the three charges that were dismissed on April 20, 2016. He thus suffered no deprivation of liberty with respect to those charges. *See Craft v. Billingslea*, No. 17-cv-12752, 2017 WL 6039559, at *5 (E.D. Mich. Dec. 6, 2017) (citing *Noonan v. Cty. of Oakland*, 683 F. App'x 455, 462-63 (6th Cir. 2017)). With respect to the felony charge, Thieneman alleges that "Officer Phelps and April Smith successfully had Thieneman arrested and charged with a [f]elony." (D.N. 1-1, PageID # 19-20) But a plaintiff asserting a malicious-prosecution claim must "[p]lead a deprivation of liberty 'apart from the initial seizure.'" *Craft*, 2017 WL 6039559, at *5 (quoting *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010)). With respect to the assault charge, Thieneman similarly alleges that he was arrested but adds that he was booked and "spent several hours in jail." (D.N. 1-1, PageID # 11-13) Although the Sixth Circuit has recognized that imposition of certain pretrial restrictions may constitute a deprivation of liberty sufficient to support a malicious-prosecution claim, *see Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017), Thieneman does not allege that he was subject to any such restrictions.[4] Thus, his allegation that he "spent several hours in jail" is insufficient. (D.N. 1-1, PageID # 13) *See Craft*, 2017 WL 6039559, at *2, *5-6 (dismissing malicious-prosecution claims where plaintiff was arrested and jailed). Because Thieneman has not adequately alleged a deprivation of liberty, his malicious-prosecution claims must be dismissed.

---

[4] This deficiency might have been cured by requesting leave to file an amended complaint that more precisely described the alleged deprivation of liberty, as required by the standards discussed above. Yet, Thieneman's counsel waited six months before responding to the motions to dismiss, neglected to request leave to amend the complaint, and opted not to respond to the motions to strike. This incomprehensible indifference results in a complaint that fails to state a claim upon which relief can be granted.

### ii.        Wrongful Arrest and False Imprisonment (Count II)

As explained above, state law determines the statute of limitations in § 1983 suits. *See Klotz v. Shular*, No. 3:14-CV-00723-GNS, 2015 WL 4556267, at *5 (W.D. Ky. July 28, 2015) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). The statute of limitations for wrongful-arrest and false-imprisonment claims under § 1983 "is that which the State provides for personal-injury torts." *Id.* (quoting *Wallace*, 549 U.S. at 387). In Kentucky, the statute of limitations for personal-injury torts is one year. Ky. Rev. Stat. § 413.140(1); *see Klotz*, 2015 WL 4556267, at *5. "[A] claim for wrongful arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal process ends." *Klotz*, 2015 WL 4556267, at *5 (quoting *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007)).

The complaint alleges that Thieneman was unlawfully arrested on September 16, 2013, and on or about May 29, 2014. (D.N. 1-1, PageID # 12, 19-20) On September 16, 2013, Thieneman "spent several hours in jail," which indicates that he was released later that same day or the next day at the latest. (*See id.*, PageID # 13) The complaint does not indicate when Thieneman was released from jail following the May 29, 2014 arrest. Therefore, the false-arrest claims accrued on September 16 or 17, 2013, for the first arrest and May 29, 2014, for the second arrest. *See Klotz*, 2015 WL 4556267, at *5. Thieneman did not file his complaint until March 2017. (D.N. 1-1, PageID # 33) Because the one-year statute of limitations had already run by that time, Thieneman's § 1983 claims for wrongful arrest and false imprisonment against Louisville Metro will be dismissed as untimely. *See Carter v. Porter*, 617 F. Supp. 2d 514, 518-19 (E.D. Ky. 2008) (dismissing § 1983 wrongful-arrest and false-imprisonment claims where complaint was filed more than one year after the plaintiff's release and arraignment).

### iii. Violations of Procedural and Substantive Due Process (Count III)

Thieneman alleges that Defendants violated his due-process rights by "intentionally falsifying testimony and reports that were used to arrest and prosecute [him]" and "deliberately and intentionally falsif[ying] evidence and testimony as well as intentionally conceal[ing] the true facts."[5] (D.N. 1-1, PageID # 25) First, Louisville Metro argues that these claims are barred by Thieneman's conviction. (D.N. 4-1, PageID # 51) But as the Court has already noted, Thieneman was convicted of wanton endangerment only. (D.N. 1-1, PageID # 20) Thus, he may pursue claims based upon other criminal proceedings—like those for assault and violation of a domestic-violence order—that terminated in his favor. (*See id.*, PageID # 12, 19-21) Second, Louisville Metro argues that Thieneman's allegations should be remedied through a *Brady* claim, and that there is no *Brady* violation where criminal proceedings have been terminated in favor of the defendant. (D.N. 4-1, PageID # 51-52)

"This Court recently rejected the notion, however, that a fabrication-of-evidence claim must be treated as a claim for violation of *Brady*." *Jenkins v. Louisville-Jefferson Cty. Metro Gov't*, No. 3:17-cv-151-DJH, 2018 WL 345119, at *7 (W.D. Ky. Jan. 9, 2018) (citing *Brown v. Louisville Jefferson Cty. Metro Gov't*, No. 3:16-cv-460-DJH, 2017 WL 4288886, at *5 (W.D. Ky. Sept. 27, 2017)). In *Jenkins*, the plaintiff alleged that the defendants had deprived him of due process "by intentionally falsifying testimony and reports that were used to arrest and indict [him]." *See id.* The Court concluded that the plaintiff's fabrication-of-evidence claim should have been brought under the Fourth Amendment as opposed to the Fourteenth. *See id.* at *8 (citing *Jackson v. Cty. of Washtenaw*, 310 F. App'x 6, 7 (6th Cir. 2009)). Because the plaintiff

---

[5] Thieneman also appears to assert a *Brady* violation against Defendant Phelps in this section of the complaint. That claim is not at issue here, however, as Phelps has not moved to dismiss the claims against her.

had alleged facts that "appear[ed] to support a Fourth Amendment fabrication-of-evidence claim," however, the Court permitted him to amend his complaint to correctly plead his claim. *Id.* at *8.

In contrast, Thieneman has not alleged facts to support a Fourth Amendment fabrication-of-evidence claim. "To state a fabrication-of-evidence claim, [Thieneman] must plausibly allege that the [d]efendant[s] knowingly fabricated evidence against him and that there is a reasonable likelihood that the false evidence could have affected the decision of the jury." *Vigil v. City of Newport*, No. 16-224-DLB-CJS, 2018 WL 344986, at *11 (E.D. Ky. Jan. 9, 2018) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006)). Thieneman has alleged that defendants "intentionally falsif[ied] testimony and reports that were used to arrest and prosecute [him]" and "deliberately and intentionally falsified evidence and testimony as well as intentionally concealed the true facts, all of which directly caused [his] deprivation of liberty." (D.N. 1-1, PageID # 25) These conclusory allegations merely recite the elements of the cause of action and cannot support Thieneman's claim. *See Iqbal*, 556 U.S. at 678. They also fail to specifically allege which defendant or defendants falsified evidence. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (citations omitted) (reaffirming prior holdings that "damages claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right"). It follows then that Thieneman asserts no viable due-process or fabrication-of-evidence claims, and the Court will dismiss Count III of the complaint.

### iv.     Failure to Intervene (Count IV)

"To plausibly state a failure-to-intervene claim, [Thieneman] must show that the defendants '(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring.'" *Vigil*, 2018 WL 344986, at *12 (quoting *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014)).   The complaint alleges that Defendants "stood by without intervening to prevent the violation of . . . Thieneman's constitutional rights, even though they had the opportunity to do so."  (D.N. 1-1, PageID # 26)

Thieneman brings this failure-to-intervene claim against all defendants.  (*Id.*)  But he also asserts that all of the defendants violated his constitutional rights.  (*See id.*, PageID # 21-27)  Where a plaintiff alleges that defendants participated in unconstitutional activity, "[i]t is nonsensical to advance a claim that [those same defendants] failed to intervene against [themselves]."  *Walker v. City of Lebanon*, No. 3:12-CV-855-H, 2013 WL 6185402, at *5 (W.D. Ky. Nov. 25, 2013).  In addition, Thieneman's blanket allegations against "All Defendants" are insufficient to avoid dismissal of his § 1983 claim.  *See Brown*, 2017 WL 4288886, at 4 (citing *Heyne*, 655 F.3d at 564).  The Court will therefore dismiss the failure-to-intervene claim against Louisville Metro.

In short, all § 1983 claims against Louisville Metro will be dismissed, as Thieneman has failed to state a claim for an underlying constitutional violation.

### 2.     Claims Against Geiser

Thieneman also brings claims against Geiser under both state and federal law.  Geiser served as prosecutor during Thieneman's trial on the wanton-endangerment and assault charges.  (D.N. 1-1, PageID # 13)   Geiser was also the prosecutor assigned to the case in which

Thieneman was charged with a felony for violating a domestic-violence order. (*Id.*, PageID # 20)

Prosecutors "enjoy absolute immunity from civil liability related to their performance of 'prosecutorial' functions." *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "[C]ourts use a 'functional approach' when determining whether a government official's actions fit within the category of actions traditionally entitled to absolute immunity." *Id.* (citing *Burns*, 500 U.S. at 486). "Using this approach, courts must look to 'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). "Functions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial . . . process' are absolutely immune from civil suits." *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "Meanwhile, functions which are more 'investigative' or 'administrative' in nature, because they are more removed from the judicial process, are subject only to qualified immunity." *Id.* (citing *Burns*, 500 U.S. at 486). "[A] prosecutor's allegedly improper motive alone is not enough to defeat absolute immunity, so long as the general nature of his actions falls within the scope of his duties as an advocate for the state." *Cady v. Arenac Cty.*, 574 F.3d 334, 341 (6th Cir. 2009). As this Court has recognized, "[p]rosecutorial immunity even applies when a prosecutor acts wrongfully or maliciously." *Akins v. Reed*, No. 3:17-CV-P18-CRS, 2017 WL 1044697, at *2 (W.D. Ky. Mar. 17, 2017) (citing *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989)).

Thieneman alleges that during the trial of his wanton-endangerment and assault charges, Geiser "admitted in closing arguments that Smith lied during the trial," "made false statements to the jury," "accused a witness of crimes," and "falsely accused Thieneman of 'planting' a defense

witness[] and suborning perjury." (D.N. 1-1, PageID # 13) Thieneman further alleges that Geiser "used the flawed felony charge as bait in the attempt to coerce [him] . . . to plead guilty to the [a]ssault charge[] in return for getting the [f]elony charge dropped." (*Id.*, PageID # 20) But "a prosecutor's plea bargaining activities, regardless of motive, warrant absolute immunity." *Rouse v. Stacy*, 478 F. App'x 945, 951 (6th Cir. 2012). And the Supreme Court has recognized that prosecutors are immune from liability for knowingly using false testimony at trial. *See Burns*, 500 U.S. at 486. In short, "[n]othing in the complaint suggests that [Geiser was] acting in any capacity other than in [her] role as an advocate for the state in the judicial process." *Carr v. Buckley*, No. 3:16-cv-P748-DJH, 2017 WL 1347691, at *5 (W.D. Ky. Apr. 7, 2017). All of Thieneman's claims against Geiser are therefore barred by prosecutorial immunity and will be dismissed. *See id.*; *see also Imbler*, 424 U.S. at 427 (concluding that prosecutors enjoy the same absolute immunity under § 1983 that they do at common law).

### 3. Claims Against Smith

Finally, Thieneman brings claims against Smith under both Kentucky law and section 1983. The Court will again address the state-law claims first, followed by the federal claims.

#### a. State-Law Claims

##### i. Malicious Prosecution (Count I)

A malicious-prosecution claim under Kentucky law consists of five elements:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff; 2) the defendant acted without probable cause; 3) the defendant acted with malice . . . ; 4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding.

*Jenkins*, 2018 WL 345119, at *5 (citing *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016)).

"A private person who . . . procures the institution of criminal proceedings against another who

is not guilty of the offense charged [may be] subject to liability for malicious prosecution." *Martin*, 507 S.W.3d at 11 (quoting Restatement (Second) of Torts § 653 (Am. Law Inst. 1977)).

In Kentucky, a claim for malicious prosecution must be brought within one year of its accrual. Ky. Rev. Stat. § 413.140(1)(c). Similar to the federal rule, a malicious-prosecution claim accrues under Kentucky law upon favorable termination of the criminal proceedings. *Lee v. Stanley*, No. 2015-CA-001264-MR, 2017 WL 465319, at *3 (Ky. Ct. App. Feb. 3, 2017). Therefore, Thieneman cannot pursue malicious-prosecution claims based upon the March 19, 2014 charge or the charge that followed a month or two later, as both charges were dismissed well over one year before this lawsuit was filed. (*See* D.N. 1-1, PageID # 17-18, 33) Thieneman may, however, pursue claims based upon the assault charge, the felony charge, and the three additional charges, as they were all terminated in his favor less than one year before he filed the instant complaint. (*See id.*, PageID # 20-21, 33)

First, Thieneman was arrested and then acquitted of assault. (*Id.*, PageID # 12, 20) The complaint alleges that Smith "dishonestly report[ed] to Officers Haworth and Banta that she had been assaulted by Thieneman." (*Id.*, PageID # 11) The complaint further alleges that the officers arrested Thieneman based upon Smith's testimony alone. (*Id.*) These allegations are sufficient at this stage to show that Smith procured a criminal proceeding against Thieneman. *See Tucker v. Heaton*, No. 5:14-CV-00183-TBR-LLK, 2016 WL 7007527, at *7 (W.D. Ky. Nov. 29, 2016) (noting that a person may procure the institution of criminal proceedings at the hands of a public official by "knowingly providing false or misleading information which causes the official to institute the criminal proceeding" (citing Restatement (Second) of Torts § 653 cmt. g)). Thieneman also sufficiently alleges a lack of probable cause, as he states that he was arrested based upon false information. (D.N. 1-1, PageID # 11) *See Hall v. City of*

*Williamsburg*, No. 6:16-304-DCR, 2017 WL 3668113, at *7, *10 (E.D. Ky. Aug. 24, 2017).

And malice "can be inferred from . . . lack of probable cause." *Id.* at *10 (quoting *Phat's Bar & Grill v. Louisville Jefferson Cty. Metro Gov't*, 918 F. Supp. 2d 654, 665 (W.D. Ky. 2013)). The complaint further alleges that Thieneman was acquitted of assault, meaning that the proceeding terminated in his favor. (D.N. 1-1, PageID # 20) *See Duncan v. Newby*, No. 5:17-CV-137-TBR, 2018 WL 627573, at *6-7 (W.D. Ky. Jan. 29, 2018). Finally, Thieneman has alleged damages, including loss of liberty, mental and emotional injury, damage to reputation, public embarrassment, loss of business, and loss of funds spent on attorney fees. (D.N. 1-1, PageID # 22) The Court concludes that these allegations with respect to the assault charge are sufficient, at this early stage, to state a claim against Smith for malicious prosecution under state law.

Second, Thieneman was arrested on a felony charge for violating a domestic-violence order, and the charge was later dismissed. (*Id.*, PageID # 19-20) However, the allegations against Smith with respect to this charge are vague and conclusory. The complaint merely alleges that "Officer Phelps falsified a police report to obtain a warrant for Thieneman's arrest." (*Id.*, PageID # 19) The complaint then alleges that "Officer Phelps and April Smith successfully had Thieneman arrested and charged with a [f]elony[] for violating the Oldham Family Court DVO." (*Id.*, PageID # 19-20) But the complaint contains no facts showing that Smith pressured Officer Phelps to prosecute Thieneman for this felony, provided false information to Phelps that caused the prosecution, or otherwise took an active role in the prosecution after learning that it was not based upon probable cause. *See Tucker*, 2016 WL 7007527, at *7-8. Because Thieneman has not sufficiently alleged that Smith "initiated, continued, or procured" the felony charge, his state-law malicious-prosecution claim based upon this charge will be dismissed. *See Jenkins*, 2018 WL 345119, at *5.

Finally, Thieneman was apparently charged with violation of a domestic-violence order, violation of conditions of release, and retaliation against a participant in a legal proceeding, and the charges were dismissed as factually unsupported. (D.N. 1-1, PageID # 21) Thieneman's complaint makes no connection between these charges and Smith, however. The malicious-prosecution claim will therefore be dismissed to the extent that it rests upon these three charges. *See Jenkins*, 2018 WL 345119, at *5 (requiring that the defendant "initiate[], continue[], or procure[]" a criminal proceeding).

In sum, Thieneman may proceed with his malicious-prosecution claim against Smith under Kentucky law only to the extent that it is based upon the assault charge.

### ii. Wrongful Arrest and False Imprisonment (Count II)

Under Kentucky law, an action for wrongful arrest or false imprisonment[6] must be brought within one year after the cause of action accrues. Ky. Rev. Stat. § 413.140(1)(c); *see Dunn*, 226 S.W.3d at 70. "[T]he statute of limitations begins to run against an action for false imprisonment or false arrest when the alleged false imprisonment ends . . . ." *Dunn*, 226 S.W.3d at 69.

As discussed above within the context of Louisville Metro's liability, Thieneman alleges two unlawful arrests: one on September 16, 2013, and another on or about May 29, 2014. (D.N. 1-1, PageID # 12, 19-20) On September 16, 2013, Thieneman "spent several hours in jail," so he was presumably released later that same day or the next day at the latest. (*See id.*, PageID # 13) Because the complaint is silent as to when Thieneman was released from jail following the May 29, 2014 arrest, the Court must assume that he was released the same day. Thus, the one-year statute of limitations began to run on these false-imprisonment claims on September 16 or 17,

---

[6] The Kentucky Supreme Court "refer[s] to the torts of false imprisonment and false arrest together as false imprisonment." *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007).

2013, for the first arrest and May 29, 2014, for the second arrest. *See Dunn*, 226 S.W.3d at 69. Thieneman did not file his complaint until March 23, 2017. (D.N. 1-1, PageID # 33) The Court will therefore dismiss Thieneman's false-imprisonment claims under state law, as they are untimely.

**b.     Section 1983 Claims**

A private party such as Smith, who conspires with state officials to violate constitutional rights, may qualify as a state actor and be held liable under § 1983. *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000); *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989). Conspiracies between private and state actors must be adequately alleged to establish state action at the motion-to-dismiss stage. *Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007); *see Memphis Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905-06 (6th Cir. 2004). But to hold Smith liable as a state actor, Thieneman must allege that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *See Revis*, 489 F.3d at 290 (citing *City of Memphis*, 361 F.3d at 905-06). The allegations in Thieneman's complaint fail to meet this three-part standard.

The complaint alleges (1) that Officer Phelps "instructed Smith to file an Emergency Protection Order against Thieneman" after Thieneman was arrested based upon Smith's allegedly false report of an assault and (2) that Smith and Phelps "conspired to concoct a plan to drag Thieneman back into court in an effort to arrest him for 'violating' the DVO" and "conspired again in an attempt to get Thieneman arrested again for violating the DVO." (D.N. 1-1, PageID # 11, 16-18) Putting aside the conclusory allegations that Smith and Phelps conspired against him, Thieneman asserts no facts to support the conclusion that Smith and Phelps formed

a plan to deprive him of his constitutional rights. *See Revis*, 489 F.3d at 287 (rejecting conspiracy claim where complaint merely alleged a conspiracy with no facts showing a plan or objective to deprive the plaintiff of his constitutional rights). The Court will therefore dismiss Thieneman's § 1983 claims against Smith. *See DeFibaugh v. Big Brothers/Big Sisters of Ne. Ohio*, No. 1:17-CV-645, 2017 WL 4620795, at *9 (N.D. Ohio Oct. 16, 2017) (dismissing claim for federal civil conspiracy where plaintiffs alleged nothing to support existence of an agreement between conspirators to deprive plaintiffs of their constitutional rights).

Even if Smith could be held liable under § 1983, the Court would nonetheless dismiss the federal claims against her for malicious prosecution (Count I), wrongful arrest (Count II), and false imprisonment (Count II) for the same reasons that those claims fail against Louisville Metro. *See supra* Section II.B.1.b. Thieneman's claims against Smith for violations of procedural and substantive due process (Count III) and failure to intervene (Count IV) fare no better, as a private citizen cannot be held liable for such claims. *See Nicholson v. Delgadillo*, No. 1:12-CV-00470-EJL-CWD, 2014 WL 1612624, at *6 (D. Idaho Apr. 22, 2014) (noting the absence of any authority supporting the position that a private citizen can be held liable under § 1983 for failure to intervene); *Jones v. Delaney*, 610 F. Supp. 2d 46, 52 (D.D.C. 2009) (noting that private citizens cannot be guilty of violating due-process rights).

### 4. Kentucky Constitution (Count VII)

Count VII of Thieneman's complaint is titled "constitutional right to remedy" and quotes Section 14 of the Kentucky Constitution: "All courts shall be open, and every person for an injury done him in his lands, goods, person[,] or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial[,] or delay." (D.N. 1-1, PageID # 31) Ky. Const. § 14. The nature of Thieneman's claim here is unclear, but Kentucky has not

recognized a private right of action to recover money damages for a violation of the state constitution. *See Conn v. Deskins*, 238 F. Supp. 3d 924, 930 (E.D. Ky. 2017) (citations omitted). Count VII of the complaint will therefore be dismissed.

## III.    CONCLUSION

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Smith's motion to join Geiser and Louisville Metro's motion to strike (D.N. 8) is **GRANTED**.

(2)    The motion to strike Thieneman's response (D.N. 7) is **GRANTED**. The Clerk of Court is **DIRECTED** to strike Thieneman's response (D.N. 6) from the record of this matter.

(3)    Smith's motion to join Geiser and Louisville Metro's motion to dismiss (D.N. 5) is **GRANTED**.

(4)    Geiser and Louisville Metro's motion to dismiss (D.N. 4) is **GRANTED**.

(5)    Smith's motion to dismiss (D.N. 5) is **GRANTED** in part and **DENIED** in part. The state-law claims against Smith for wrongful arrest and false imprisonment (Count II) and the section 1983 claims against Smith for malicious prosecution (Count I), wrongful arrest and false imprisonment (Count II), due-process violations (Count III), and failure to intervene (Count IV) are **DISMISSED**. Thieneman's malicious-prosecution claim under state law (Count I) may proceed against Smith to the extent that it is based upon the assault charge.

March 26, 2018

**David J. Hale, Judge**
**United States District Court**